Nov. Term,
1853.

JUDAH
v.
THE AMERI-
CAN LIVE
STOCK INSU-
RANCE CO.

---

JUDAH *v.* THE AMERICAN LIVE STOCK INSURANCE COMPANY.

4   333
142   394

In 1850 the legislature enacted a law the first section of which declared that all such persons as should become stockholders to the capital stock thereinafter mentioned, their successors, &c., should be and were thereby constituted a body corporate by the name of the *American Live Stock Insurance Company*. The second section enacted that one *A.* and seven others named, or a majority of them, should be commissioners to receive subscriptions of stock, and that, when two hundred shares should be subscribed, they should call a meeting of the stockholders "by an advertisement published in such place or places as the commissioners might determine, stating the time and place at which such meeting of the stockholders shall by ballot elect the first directors of said company." It was further enacted that the stock should be in shares of 50 dollars each, and that, at the time of subscribing, there should be paid an instalment of 1 dollar on each share subscribed, and that the remainder should be paid at such time and on such terms as should be determined

Nov. Term,
1853.

JUDAH
v.
THE AMERI-
CAN LIVE
STOCK INSU-
RANCE CO.

by the president and directors of the company. Under this law, articles of association were prepared, the subscribers to which severally undertook to pay 5 per cent., in cash, at the time of subscribing, and to secure the balance by executing a promissory note, to be approved by the directors, payable on demand. *B.* became a subscriber of ten shares, and executed his note for the amount of his subscription, less 5 per cent., payable on demand "in such sums and at such times as might be duly assessed thereon by order of the directors to meet the exigencies of said company." In a suit against *B.* upon his subscription and note,

*Held*, that the question whether the exigencies of the company required the payment of the instalments, could not be raised in a suit at law to recover them.

*Held*, also, that the fact that the commissioners may not have met to receive subscriptions, nor called a meeting of the stockholders to elect directors, did not annul or vitiate the existence of the corporation.

*Held*, also, that the provision in said section 2 for the raising of the stock and bringing about the first election of directors, was directory, and merely for convenience, and not essential to the validity of the corporate organization.

*Held*, also, that a plea setting up that 1 dollar on a share was not paid at the time of subscribing, was no defence to the action.

*Held*, also, that the facts that one *C.*, who received the subscription, represented that he was authorized to receive the subscriptions, when he was not, and that the directors had not ordered it to be taken, were no defence to the action.

*Held*, also, that the first section of the company's charter created the corporation out of the stockholders; and, so soon at least as the stock was subscribed, the corporation was complete, without the election of directors, and without a formal organization.

*Semble*, that a person who has contracted with an organization as a corporation, is estopped from denying its legal corporate existence, at the date of his contract, where there is no fraud.

On questions as to the power of corporations to deal in their corporate capacity with third persons, they will be limited by the terms of their respective charters; but, on questions relating to the mere manner of getting them into operation, a liberal construction of their charters will be adopted.

Where the particular facts set up in a special plea are admissible in evidence under a general plea filed in the cause, it need not be examined whether a demurrer to the former plea was improperly sustained or not.

*Tuesday,*
*November* 29.

APPEAL from the *Knox* Circuit Court.

PERKINS, J.—On the 2d day of *January*, 1850, a public law was enacted, the first section of which declared—"That all such persons as shall become stockholders to the capital stock hereinafter mentioned, their successors

Nov. Term, 1853.

JUDAH
v.
THE AMERI-
CAN LIVE
STOCK INSU-
RANCE CO.

and assigns, shall be and are hereby constituted and made a body politic and corporate, by the name and style of *The American Live Stock Insurance Company.*"

The second section enacted that *Hiram Decker*, M. D., and seven other persons named, or a majority of them, should be commissioners to receive subscriptions of stock, and that when two hundred shares might be subscribed, a meeting of the stockholders should be called by them for the election of directors.

By the fourth section it was provided that the stock should be in shares of 50 dollars each, and that, at the time of subscribing, there should be paid "an instalment of one dollar on each share of stock" subscribed, and that the remainder should be paid "at such time and on such terms as should be determined by the president and directors of said company." Local Laws 1850, p. 146.

Under this law articles of association were prepared, as follows:

"Subscription to the capital stock of *The American Live Stock Insurance Company.* Conditions of subscribing:

"1. 5 per cent. to be paid in cash at the time of subscribing;

"2. The balance to be secured by executing a promissory note, payable on demand, to be approved by the directors.

| Date of Sub. | Names. | Residence. | No. of Shares. | Cash Pay't. |
|---|---|---|---|---|
| January 21. | B. S. Whitney | Vincennes. | 10. | 25." |

Then follow forty-two additional subscribers, with an aggregate of two hundred and twenty-eight shares, *Samuel Judah* being the last, and a subscriber of ten shares.

Subsequently the following note was executed:

"$475. No. 28. *Vincennes, February* 9th, 1850. On demand, I promise to pay to the order of *The American Live Stock Insurance Company*, for value received, four hundred and seventy-five dollars, without any relief whatever from valuation or appraisement laws of the state of *Indiana*, in such sums and at such times as may be duly assessed hereon by order of the directors, to meet the exigencies of said company. [Signed] *Samuel Judah.*"

On this subscription of stock and this promissory note,

Nov. Term, 1853.

Judah
v.
The Ameri can Live Stock Insur ance Co.

by a declaration containing all proper averments, suit was commenced by the company on the 5th day of *August*, 1851.

To the suit the defendant pleaded fourteen pleas. On seven of them issues of fact were made, and to seven demurrers were filed and sustained. The issues of fact were tried and found for the plaintiff, who had final judgment for the amount of the note.

The seven pleas on which issues of fact were found, were the general issue, and pleas denying the existence of the corporation, denying that any assessment had been made, and setting up a want of consideration and fraud generally, and asserting payment and a set-off.

The seven pleas demurred to set up in defence that the exigencies of the company did not demand the payment of the money; that the subscription and note were obtained by fraud, in this, that one *Benjamin S. Whitney* represented that the company was duly organized, and that he was authorized to receive subscriptions of stock, when such were not the facts; that the commissioners named in the charter never met to receive subscriptions of stock, and did not call a meeting for the first election of directors; that 1 dollar on a share was not paid at the time of subscribing, on two hundred shares; and that the directors did not order the raising of additional stock.

Such is the case.

The question whether the exigencies of the company required the payment of the instalments, was not one to be raised in a defence to a suit at law for the recovery of the instalments. The charter declares that they shall be paid on the call of the directors, and the terms of subscription of stock and the note sued on say the same thing. The note adds, in meaning, what the contract and law themselves, without the addition, would imply, that the instalments collected should be for the general uses and necessities of the corporation. But the question whether those necessities demanded the payment of the money, was for the directors; and when payment was ordered by them, it was necessarily to be made.

Nov. Term,
1853.

JUDAH
v.
THE AMERI-
CAN LIVE
STOCK INSUR-
ANCE CO.

Policy, as well as a reasonable construction of the charter and contract, requires that such should be the rule of decision. If every stockholder in an insurance company like that in question, might be allowed to dispute the necessity of every assessment upon his stock, the right of those insured to obtain a speedy reimbursement of losses would be placed too much at hazard.

The plea setting up that 1 dollar on a share was not paid at the time of subscribing, was no defence to this action. The mutual subscription of stock by the members of the corporation, for the accomplishment of the object proposed, constituted a good and valuable consideration for each separate subscription, and each subscription became a legal and valid obligation to the company. The provision that the small sum of 1 dollar on each share should be paid at the time of subscribing, was inserted to supply the funds necessary to meet the expenses incident to raising and putting into operation the corporation, and, hence, might be waived so far as its enforcement was not necessary for that purpose. This must be so, for, should the amount of stock required by the charter to authorize the company to transact business, never be obtained, the money derived from the dollar payment of those subscribing would never be applied to any other object than the payment of expenses, and to that object it might be applied, if needed, whether the company ever went into operation or not. But if we are wrong in this view, still that plea must be bad, for it limits its denial of the payment of 1 dollar on a share to the time of making the subscription, and does not allege that it was not made on all the two hundred and twenty-eight shares subsequently, and before the organization of the company. Such a payment would have been a sufficient compliance with the charter. The provisions contained in it in regard to the getting up of this insurance company, were not necessarily to be literally, but only substantially, complied with. No good could result from adopting the opposite rule of decision, while much inconvenience and harm might be the consequence. On questions as to power of dealing in a

Nov. Term,
1853.

JUDAH
v.
THE AMERI-
CAN LIVE
STOCK INSUR-
ANCE CO.

corporate capacity, with third persons, these companies must be limited by their respective charters; but on those relating to the mere manner of getting into operation—of becoming prepared to act—a liberal construction is to be adopted. Where these questions arise upon evidence, we have already held that "every presumption is indulged in favor of the legal existence of a corporation after it has gone into operation." 2 Ind. R. 437. It will hardly be contended, we think, by any one, that the provision in the charter under consideration should be so construed as to invalidate the entire, or a single subscription even, that may have been made on one day without payment of the dollar on the share, but upon which the amount was tendered and accepted on the following day, and before the going into operation of the company.

The facts that *Whitney* was not, at the time, authorized to receive the subscription, and that the directors had not ordered it to be taken, are of no weight. If the subscription of stock was accepted by the company, all previous want of authority in the agent was cured, and the object of the subscriber in making his subscription, fully accomplished. And if *Whitney* made fraudulent representations in obtaining the subscription which vitiated it, the defendant might have shown them upon the trial of the issue upon the general plea of fraud, and of the general issue. Hence, the decision below in reference to those representations as set forth in the special plea of fraud, upon demurrer, need not be here examined.

The remaining questions raised relate to the organization of the company under the provisions of the second section of the charter. That section is as follows:

"That *Hiram Decker, M. D.*," and seven other persons who are named, "or a majority of them, shall be commissioners to receive subscriptions to the capital stock of said company, which subscriptions shall be received upon such notice and at such time and place as said commissioners shall direct; and as soon as two hundred shares of said stock shall be subscribed, said commissioners shall call a meeting of the stockholders, by an advertise-

ment published in such place or places as the commissioners may determine, stating the time and place at which such meeting of the stockholders shall by ballot elect the first directors of said company."

Nov. Term, 1853.

JUDAH
v.
THE AMERI-
CAN LIVE
STOCK INSUR-
ANCE CO.

The latter part of the section is loosely drawn, imperfectly and somewhat vaguely expressed, but its meaning can be made out.

Before proceeding to compare the action of the company with its provisions, it should be premised that the first section of the charter creates the corporation out of the stockholders. So soon as the stock is subscribed, at least, the corporation is complete without the election of directors and without a formal organization. The section declares that "all such persons as shall become stockholders," &c., "shall be, and are hereby constituted and made a body politic and corporate," &c.

It may also be observed, that it seems to be the law that a person who has contracted with an organization as a corporation, is estopped to deny its legal corporate existence at the date of his contract, where there is no fraud. *John* v. *The Farmers'*, &c., *Bank*, 2 Blackf. 367.— *The Guaga Iron Company* v. *Dawson*, 4 *id.* 202.—*Morgan* v. *The Lawrenceburgh Ins. Co.*, 3 Ind. R. 285.—*Trumbull County Mutual Ins. Co.*, v. *Homer*, 17 Ohio R. 407.—*South Bay Meadow Dam Co.* v. *Gray*, 30 Maine R. 547.—*Vermont Central R. R. Co.* v. *Clayes*, 21 Verm. R. 30.—*Caryl* v. *McElrath*, 3 Sandf. (N. Y.) R. 176.

If such estoppel exists as to third persons, much more should it be held to as against a stockholder, a member of the body associated, one who may have participated in its organization, such as it may have been.

But was the corporation in the present case, so far as appears by the record before us, illegally organized? It is not denied that the requisite amount of stock had been subscribed, nor is it that directors had been elected by a vote of all the stockholders; but it is said that the commissioners named in the act did not meet to receive said subscriptions, and did not call a meeting of the stockholders to elect directors. Suppose this all true, does it

Nov. Term,
1853.

JUDAH
v.
THE AMERI-
CAN LIVE
STOCK INSUR-
ANCE Co.

vitiate the existence of the body corporate? We do not see why it should. An act is passed to create an insurance company. It is to consist of the stockholders. But it seems proper that, for convenience, some persons should be designated to take the initiatory steps in getting up the company; and, at a proper time, to call the members together to fulfill another requirement of the charter, viz., the election of directors. Thus concert and union of action would be secured, when, otherwise, it might not. The persons designated to perform these acts need not be, and are not in the charter before us, made members of the corporation. Now, it is plain, that the material things to be accomplished here are, the procurement of the stock, and the election thereupon, by the stockholders, of directors. These things done, all is accomplished, thus far, that the law, the interest of the corporation, or the interest of the public, requires. Can it, then, be matter of importance whether the subscription paper for stock was drawn up and circulated by *Hiram Decker* and seven others, or by *John Doe*, so be it was properly drawn up and filled with the requisite number of responsible subscribers? And can it be matter of importance, after the thing is over, whether the stockholders came together on the morning of the day of election, on a notice given by *Hiram Decker* and seven others, or without a notice at all, so be all came, and in a proper and satisfactory manner, elected their directors? Suppose the commissioners named had neglected or refused to act, (and which, according to the plea, must have been the case) could not the company have been gotten up?

It seems to us that the provisions in section two of the charter, for the raising of the stock and bringing about the first election of directors, were directory and merely for convenience, and not essential to the validity of the corporate organization.

The corporation, then, so far as appears, being legally organized, and there being no unperformed act set up in defence in this suit, the performance of which was made a condition precedent to the right to sue for the assess-

ment of stock, the judgment of the Court below, for the plaintiff, was right, and must be affirmed with costs, and 2 per cent. damages.

Nov. Term, 1853.

It may be observed that some points were made on the trial of the issues at law, but they were the same as those raised by the demurrers, and are decided in the decision above made.

*Per Curiam.*—The judgment is affirmed, with 2 per cent. damages and costs.

*S. Judah*, for the appellant.

*B. M. Thomas*, for the appellees.