JOACHIM KUHL *et al.*, Respondents, v. CASPER H. MEYER, Appellant.

St. Louis Court of Appeals, December 9, 1890.

1.  **Unincorporated Society:** ACTION CONTRARY TO THE CONSTITUTION OF THE SOCIETY: NOTIFICATION OF MEETING. The rights of members of an unincorporated society, as fixed by the constitution or by-laws of the society, rest in contract. A majority of the members of the society cannot, by their irregular action, contrary to the rules to which all have agreed to abide, divert the funds of the association from the purposes for which they are held under the constitution, and distribute them among such of the members as may be willing to receive their proportionate shares thereof;

Kuhl v. Meyer.

and, when the constitution prescribes that meetings of the society shall be called in a certain manner, a meeting called otherwise, and neither attended, nor consented to, by all of the members, is illegal.

2. ———: INVALID MEETING: ESTOPPEL OF ATTENDING MEMBERS. Members of such a society, who have attended a meeting irregularly called, and concurred in illegal action taken at the same, will not be estopped from disputing the validity of the proceedings by reason of such attendance and concurrence by them.

3. **Practice, Trial:** DIRECTION FOR FINDING FOR THE PLAINTIFF. It is error to direct a jury to find for the plaintiff, so long as the defendant is entitled to go to the jury on any theory arising from the evidence; and *held* that this rule was applicable to the case at bar, since the burden of proof was on the plaintiff, and his principal allegations were controverted.

4. **Law and Fact:** ABANDONMENT OF CONTRACT. Whether a contract has been abandoned is a question of law, and this rule applies to a claim that an unincorporated society or association has been abandoned.

5. **Unincorporated Society:** ABANDONMENT. When the constitution of an unincorporated society provides for monthly meetings and payment of monthly dues, and further provides that whoever shall remain in arrears for six months in the payment of dues shall be stricken from the list without further resolution of the society, the failure of the society to hold, for the period of eleven months, the meetings provided for, and to carry out the purposes of the society for that period, will amount in law to an abandonment of the organization, but the mere non-payment of dues by members for a period of six months will not *ipso facto* deprive them of their membership, that not being the effect of the constitutional provision.

6. **Jurisdiction of Courts of Equity.** *Held* that a court of equity is better qualified than one at law to deal with controversies arising from dissensions between the members of a religious society or kindred organization, and a resulting confusion of the affairs of the society.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Rassieur & Schnurmacher* and *F. H. Bacon,* for appellant.

*W. E. Fisse*, for respondents.

THOMPSON, J.—This case was before this court on a former appeal, where the question was whether the petition stated a cause of action. *Kuhl v. Meyer*, 35 Mo. App. 206. We held that it did, but, at the same time, intimated that the action might be more properly brought in the name of the trustees of the society. Thereupon the petition was amended so as to bring an action in the name of the three trustees of the society. The petition in substance charges the defendant with having received certain funds as treasurer of the society, and with refusing to pay them over to his successor in office.

The answer, after a general denial, sets up that, at a meeting of the society held on the twenty-ninth of August, 1887, it was resolved that the funds, then in the hands of the defendant, should be distributed and equally divided among the members, and that the defendant did so disburse said funds. The plaintiffs, by a reply, deny this new matter. The cause was tried before a jury, and, at the close of the evidence, the court directed a verdict for the plaintiff in the sum of two hundred and fifty-two dollars and fifty-two cents, which appears to be the sum sued for with interest. From the judgment entered thereon the defendant appeals.

It appeared in evidence that the society was a small mutual benefit society, connected with a German Protestant Church in St. Louis. Its object was "to assist its members in illness and in cases of death, and also to induce them to lead a moral and reputable life." To this end, like other societies of this kind, it had a fund, raised by initiation fees, monthly contributions, and assessments made on the happening of the death of a member. One of the articles of its constitution provided : "A dissolution of this society cannot take place

as long as seven members wish to keep it up." Another article of its constitution provided as follows, touching its meetings:

"The society shall meet in the school room on the first Thursday of every month, * * *. Every member who shall be absent from the meetings in January, April, July and October, without sufficient excuse, shall be fined twenty-five cents for every such absence. To constitute a meeting at which business may be transacted, a quorum of at least seven members in good standing shall be necessary. Special meetings, when necessary, shall be called by the president, either upon resolution of the officers, or upon the written request of at least one-third of all the members of the society. Notice of all meetings shall be given on the previous Sunday during the service. All meetings shall be opened and closed with song and prayer."

The society had originally consisted of seventeen members, but the defendant's evidence tended vaguely to show that, at the time of which we are about to speak, its membership had dwindled to thirteen. The president, the treasurer (this defendant) and a majority of the members wished to dissolve the society, and distribute its funds among the members. The pastor of the church, who was also a member of the society, and a minority of the members were opposed to this. A petition was signed by ten members, requesting the president to call a special meeting of the society. Thereupon the president and treasurer had an interview with the pastor, which resulted in nothing more than an altercation. The president, thereupon, in accordance with this written request, called a meeting of the society, to take place at the house of Mr. Schumacher, one of the members. The reason why the meeting was appointed at a private house was that the president and treasurer did not think that they could get the use of the hall, the pastor being opposed to the object of the meeting. The defendant testifies that a notice of this

Kuhl v. Meyer.

meeting was sent to each member of the society. No notice of it was given at the church during services on the previous Sunday, as required by the article of the constitution before quoted ; nor did it appear that any attempt was made to have notice given in that way. The defendant offered evidence tending to show that ten members attended this meeting, and that a resolution was passed ordering a distribution of these funds, as pleaded in his answer ; but the court, on objection of the plaintiffs, ruled out all evidence of what there took place.

The members of the society, who did not concur in what took place at this meeting, claimed to have kept up its organization, and, at the date of this trial, it had seven members. In the following month the society claims to have held a meeting in the regular place upon regular notice, and to have elected another treasurer, who made a demand on the defendant for the funds of the society in his possession. In September of the following year, the seven remaining members contributed ten dollars each for the purpose of raising a fund to prosecute this suit. One of the plaintiffs speaks of this in his testimony as a payment of dues in advance.

We take the view that, as notice of the meeting, which took place at Mr. Schumacher's house on the twenty-ninth of August, 1887, was not properly given according to the requirements of the constitution of the society, and as no obstruction to the giving of the proper notice is shown, what took place at that meeting did not operate, *ipso facto*, as a dissolution of the society, and did not authorize the defendant, as its treasurer, to distribute its funds among the members. It is a long-settled principle in the law of corporations that, in order to give validity to acts done at a special meeting, *all* the members must be notified. *Smyth v. Darley*, 2 House of Lord's Cases, 789 ; *Commonwealth v. Guardians*, 6 Serg. & R. 469, 474 ; *Knyaston v.*

*Mayor of Shrewsbury*, 2 Strange, 1051; *Rex v. Liverpool*, 2 Burr. 734. And it is a further princip!e, equally well settled, that, where the *time* or *manner* of giving notice is prescribed by statute, by charter or by by-laws of the corporation, it is essential to the validity of the acts done at the meeting, that the notice should be given as thus prescribed. *Hunt v. School District*, 14 Vt. 300; s. c., 39 Am. Dec. 255; *Stow v. Wyse*, 7 Conn. 214; s. c., 18 Am. Dec. 99; *Stockholders, etc., v. Railroad*, 12 Bush. (Ky.) 62. But the prescribed notice may be dispensed with by *unanimous consent.* If, therefore, notwithstanding that the meeting has not been properly notified, *all* the members appear and participate in its proceedings without objection, this will be a *waiver* by each member of any objection to the notice. *Judah v. Ins. Co.*, 4 Ind. 333; *Jones v. Milton, etc., Co.*, 7 Ind. 547. But, if a single member, having a right to be present and vote, is absent or refuses his assent to the acts done at the meeting, its proceedings will be illegal and void. Angell & Ames on Corporations, 495; *Rex v. Theodorick*, 8 East. 543; *Rex v. Gaborian*, 11 East. 77. In the case of unincorporated voluntary associations like the present, the rights fixed by their constitution and by-laws rest in *contract;* but, for reasons equally strong, the mode of acting pointed out by those instruments must be pursued. *Coleman v. Knights of Honor*, 18 Mo. App. 189; *Grand Lodge v. Elsner*, 26 Mo. App. 108; *Mulroy v. Knights of Honor*, 28 Mo. App. 471. For the majority cannot break the contract which they have made, any more than a minority could do it. They have raised a fund for certain purposes of mutual benefit, and placed it under the control of trustees for the purposes of the trust declared in their constating instruments. The majority cannot, by their irregular action, contrary to the rules by which all have agreed to abide, divert this fund from the purposes of the trust, and distribute it among such of the members as may be willing to receive their proportionate

shares of it. We, therefore, have no difficulty in holding that no resolution, which may have been passed at the special meeting of this society at the house of Mr. Schumacher, could, of itself, operate to dissolve the society, or to authorize a distribution of its funds among its members.

It remains to consider whether there is any other aspect, in which such evidence may be regarded as material. It is argued, if we understand it aright, that, if the defendant had been permitted to show who were present at that meeting, it might have appeared that some of those attended and concurred in its proceedings, who now make up the seven that claim to be keeping the society alive, and that this would create an estoppel against them. We do not concur in this view. It would be tantamount to holding that a man can be estopped by his own breach of a contract from taking steps to undo the wrong caused by that breach.

But it seems to us that there is another aspect of the question, in which this evidence is relevant. Although no resolution passed at that meeting could operate to dissolve the society, yet what took place there, in connection with the subsequent conduct of the members, may have had that effect. One of the articles of its constitution was as follows :

" Every member who remains in arrears in the payment of his dues for three months, notwithstanding the fact that the secretary shall have once warned him of his default, shall lose all right to benefits, and shall be reinstated to such rights to receive benefits only thirty days after payment of all dues in arrears. Whosoever shall remain in arrears for six months in payment of dues shall be stricken from the list without any further resolution of the society."

There was evidence tending to show that the society held no meeting, collected no dues, nor did anything else towards carrying out its purposes, for about eleven months prior to the bringing of the action. This fact,

in connection with what took place at the meeting in question, might authorize a jury to find that the society had ceased to exist *de facto*, by the failure to hold its monthly meetings and collect its monthly dues, and that all rights of membership had, under the above provision, lapsed prior to the bringing of this suit. If this is a fact, these trustees represent no one and have no title which will enable them to sue. They could at most be entitled to the fund for the mere purpose of winding up their trust by distributing it among the members, which the defendant has done, as far as the members would take it, and is still offering to do. We think that, in this view of the case, the evidence as to what took place at the meeting should have been heard.

Nor do we understand how the court could have directed a verdict for the plaintiff. The plaintiff is not entitled, under our system of jury trials, to have the court direct a verdict for him, where there is any essential fact in dispute which the defendant is entitled to have submitted to the jury. In other words, this cannot be done where the defendant is entitled to go to the jury on any theory arising out of the evidence. Here, the whole question of there being any society in existence, such as once existed; of the plaintiffs being its trustees, and, as such, being entitled to its funds, and hence of their title to sue, was not admitted, but was controverted. On these questions the plaintiffs had the burden of proof, and the court could not decide that they had sustained it, without assuming the function of the jury.

But we think that the court erred in refusing to submit these questions to the jury in the manner requested by the defendant. On this question the defendant asked, and the court refused, the following instruction:

"1. If the jury believe from the evidence that the society in question has failed to hold the meetings

provided for by the constitution, for a period of eleven months, and that the society has for that period of time ceased to carry out the purposes for which it was organized, then the jury are warranted in inferring that the society has been abandoned, and the verdict should be for the defendant.''

We have already stated that the rights subsisting among the members of these unincorporated societies rest in contract merely. It is the law of this state that whether a contract has been abandoned is a question of law for the court (*Henry v. Bassett*, 75 Mo. 89, 95; *White v. Wright*, 16 Mo. App. 551); and that where an act, or a collection of acts, by one of the parties to the contract is claimed by the other party to constitute an abandonment of a contract, it is proper for the court to advise the jury whether such acts do, or do not, constitute an abandonment. *Chouteau v. Jupiter Iron Works*, 83 Mo. 73, 82. The instruction is not, therefore, vicious as a comment on the evidence, because it does not advise the jury as to a conclusion of fact, but as to a conclusion of law; and we hold that, if the hypothetical facts stated in the instruction existed, they amounted in law to an abandonment by the parties therein named of their rights of membership in the society.

But we do not think that the court could properly have given the following instruction, requested by the defendants:

"The court instructs the jury that, if they believe from the evidence that none of the persons, named in the petition as the sole members of the society, have paid any dues or assessments for a period of six months preceding this time, then they have thereby ceased to be members, and the verdict should be for the defendant.''

The article of the constitution of the society, under which this is drawn, does not state that members who are in arrears six months *thereby cease to be members;*

but it states that they "shall be stricken from the list without any further resolution of the society." But there is no evidence tending to show that either of the seven members, who claim to be keeping the society alive, have ever been "stricken from the list."

The following instruction, requested by the defendant, and refused by the court, could not have been given under any theory admissible under the pleadings :

"If the jury believe from the evidence that, on August 29, 1887, the society in question consisted of but thirteen members, and that, on that day, ten of said members, at a meeting held on the evening of that day (and that of that meeting they had given notice to all the members), resolved to dissolve said society, and to distribute among the members thereof the funds then in the hands of the treasurer, and instructed the defendant, as such treasurer, to distribute said funds, and that he has distributed all of said funds, except seventy dollars, among the members, then the jury cannot find for plaintiffs for a larger sum than seventy dollars."

The reason why this instruction could not be given is that, if the society is existent, and the plaintiffs are its trustees, and, as such, authorized to control its funds for the purposes of the trust, they are entitled to the *whole fund* which came into the hands of the defendant ; if the contrary is true, they are entitled to no part of it.

Courts of equity are much better qualified to deal with such controversies than are courts of law, and the jurisdiction of courts of equity in cases of religious societies seems to be well settled. *Brunnenmeyer v. Buhre*, 32 Ill. 183 ; *Kerr v. Trego*, 47 Pa. St. 295 ; *Lutheran Evangelical Church v. Gristgau*, 34 Wis. 328, 336 ; *Shannon v. Frost*, 3 B. Mon. ( Ky.) 253, 259. The same principle has been extended to societies, other than religious, such as the one with which we are now dealing. Thus, it was said by Mr. Justice SHARSWOOD :

"If a private partnership or corporation *falls into confusion*, affecting all its members, there is no adequate remedy at law—no better remedy than a proceeding in equity to settle the rights of the parties and to stay by injunction the inconvenience and disturbance caused by opposite factions pretending to act as the society." *Roshi's Appeal*, 69 Pa. St. 462, 467. This jurisdiction rests on the ordinary power of a court of chancery to superintend the performance of trusts. *Miller v. Gable*, 2 Denio (N. Y.) 492, 523; s. c., 10 Paige, 627. It is exercised so as to keep the property of the society in the hands of those who adhere to its original doctrines and teachings. In this manner, courts of equity enforce the trust as originally established. *Schnorr's Appeal*, 67 Pa. St. 138; s. c., 5 Am. Rep. 415; *Watson v. Jones*, 13 Wall. (U. S.) 679, 723. Nor will a court of equity allow a majority of the congregation to divert the trust property to the support of different doctrines, or otherwise to deflect it from the purpose of the original donors. *Watson v. Jones*, *supra; Attorney General v. Pearson*, 3 Mer. 352. Although courts of equity are much more frequently called upon to deal with these difficult cases than courts of law, yet the principles on which courts of equity proceed must be equally applicable in a court of law, so far as a court of law is capable of carrying them out. A majority will not be allowed, in a manner not sanctioned by the constitution of the society, to divert the funds of the society from the purposes for which they were raised; but a minority will be upheld in the possession of them, provided that this minority show that, by acting within the rules of the society, they have preserved its organization; but not otherwise.

The judgment will be reversed, and the cause remanded. All the judges concur.