JOACHIM KUEHL *et al.*, Respondents, v. CASPER H. MEYER, Appellant.

St. Louis Court of Appeals, October 25, 1892.

1. **Unincorporated Societies:** RIGHT OF TRUSTEES TO SUE. The members of an unincorporated society may confer upon some of their number the care and custody of their common property, and the right to maintain suits in reference to the same. And *held*, that this power had been conferred upon the plaintiffs in this action, and that they could, therefore, sue as trustees of an express trust.

2. ————: ABANDONMENT. Neither the loss of all the corporate property, nor a failure to hold regular meetings or to elect corporate officers, nor all combined, necessarily amount to a forfeiture of the franchise of a corporation. But when it is conceded that the objects of the corpora-

tion have been entirely abandoned, or when it appears that the power to resume business does not exist, then a legal dissolution may be declared. And these principles are applicable to unincorporated societies also.

:3. ———: RIGHT OF TRUSTEES TO SUE. The right of the trustees of an unincorporated society to maintain a suit for property placed in their custody must be determined by the status of the society at the time when the suit was brought. The fact, that the number of members of the society was reduced after the institution of the suit to less than the number required as a quorum for the transaction of the business of the society, will not constitute a defense to such an action.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*F. H. Bacon* and *Rassieur & Schnurmacher*, for appellant.

(1) Under the articles of association the trustees have no power to maintain this action; they are not trustees of an express trust. *Kuehl v. Meyer*, 35 Mo. App. 211; *Smith v. Pinney*, 49 N. W. Rep. 305; *Hewett v. Hatch*, 57 Vt. 16. (2) The failure of the society to hold meetings, taken in connection with what was done at the special meeting at which it was voted to dissolve, was in law an abandonment of the society, especially as the society did nothing to carry out the purposes of the organization between July 11, 1889, and February 20, 1892, a period of nearly three years, and but two meetings were held and no dues were paid by the members. Since the society was organized only $8 had been paid out for benefits, and since September, 1887, a period of five years, the society had done nothing but carry on this lawsuit. The last meeting of the society was July 19, 1891, but no business was transacted. On the last appeal of this case this court said (42 Mo. App. 482) that, if the society for a period of eleven months failed

to hold meetings provided for by the constitution, such failure was in law an abandonment of the society. Here is apparent a more flagrant neglect. Even in the case of corporations surrender of corporate franchise may be presumed from *non user*. *Slee v. Bloom*, 5 Johns. Ch. 366; *State v. Trustees*, 5. Ind. 77; *Iron Co. v. Gleason*, 24 Vt. 228. Failure on the part of a voluntary association to hold meetings has been held to amount to dissolution. *Penfield v. Skinner*, 11 Vt. 298; *Hewett v. Hatch*, 57 Vt. 16. (3) When the membership of the society became reduced to less than a constitutional quorum, so that it lost the power of transacting business and receiving new members, the society became thereby dissolved. This court has said that, so far as possible, the rules applicable to corporations govern in cases of voluntary associations. *Kuehl v. Meyer*, 42 Mo. App. 474; *Leach v. Harris*, 2 Brewst. 571. And, under a similar state of facts, a corporation would be deemed to have been dissolved. *In re Kip*, 1 Paige, 576; *Rex v. Passmore*, 3 T. R. 245; *State v. Societe Republicaine*, 9 Mo. App. 121; *State v. Trustees*, 5 Ind. 77; 2 Morawetz on Corporations, sec. 1007. (4) The society being abandoned, or, if not abandoned, dissolved and rendered incapable of continuing its existence, the court below should have assumed equitable jurisdiction of the matter. On the former appeal this court practically held this view. *Kuehl v. Meyer*, 42 Mo. App. 474. And further authorities need scarcely be cited to support a principle so clear. *Butterfield v. Beardsley*, 28 Mich. 412; 1 Pomeroy on Equity Jurisprudence, sec. 112. When it is apparent that the objects for which an association has been organized are impracticable, or that such objects cannot be carried out, equity will interfere and wind up the affairs of the society. *Waterhouse v. Murgatroyd*, 9 L. J. Ch. 272; *Beaumont v. Meredith*, 3 Ves. & Beav.

181; *Pearce v. Piper*, 17 Ves. 1; *Reeve v. Parkins*, 2 Jac. & Walk. 390; *Chicago v. Hunt*, 20 N. E. Rep. (Ill.) 55; *Koehler v. Brown*, 2 Daly, 78; *Ables v. McKeen*, 18 N. J. Eq. 462.

*Fisse & Allen*, for respondents.

(1) The plaintiffs in this case are entitled to sue as trustees, and are the proper parties to sue this defendant. They are intrusted with the ultimate authority in all financial matters by the constitution of the society. Constitution of Society, arts. 10, 13. And the directors in unincorporated benevolent associations, such as this is, are trustees of an express trust. *Hammerstein v. Parsons*, 38 Mo. App. 332, 339; *Watson v. Jones*, 13 Wall. 679, 720. (2) The society never was abandoned or dissolved. The second point in appellant's brief includes an incorrect statement of facts and a mistaken conclusion of law. This court did not declare that failure to hold meetings alone constituted an abandonment of the society. *Kuehl v. Meyer*, 42 Mo. App. 474. Nor do any of the cases cited by appellant support that proposition. On the contrary, they tend to support its converse. *Iron Co. v. Gleason*, 24 Vt. 228; *Slee v. Bloom*, 5 Johns. Ch. 366; *State v. Trustees*, 5 Ind. 77; *Penfield v. Skinner*, 11 Vt. 298; *Hewett v. Hatch*, 57 Vt. 16. (3) The trustees are alone entitled to recover the money, even though it be only for the purpose of winding up the affairs of the society. This court holds that the laws affecting corporations apply by analogy to the case at bar. *Kuehl v. Meyer*, 42 Mo. App. 474. By analogy, then, even if the society had been dissolved, the trustees would be entitled to recover. R. S. 1889, sec. 2513. Nor have the majority of members the right to divert the funds from the purposes of the trust. *Watson v. Jones*, 13

Wall. 679, p. 723; Bacon on Benevolent Societies, secs. 38, 39, and cases cited. And funds collected for a benevolent purpose cannot be divided among the members by a vote, even on the dissolution of the society. *Duke v. Fuller*, 9 N. H. 536; s. c., 32 Am. Dec. 392, cited in Bacon on Benevolent Societies, sec. 39. (4) The defendant in this case cannot invoke the equitable powers of the court to avoid his legal liability. He who seeks equity must do equity. *Kline v. Vogel*, 90 Mo. 239. He who comes into equity must do so with clean hands. *Cassidy v. Metcalf*, 1 Mo. App. 593. Nor is it necessary to invoke the equitable powers of the court, or to have a complete account and winding up of the society's affairs, in order to settle the rights of the members among themselves. *Kuehl v. Meyer*, 35 Mo. App. 206, 211.

BIGGS, J.—This is the third time that this case has been before us. 35 Mo. App. 206; 42 Mo. App. 474. The last opinion contains a statement of the principal facts, which makes it unnecessary to restate them here. The additional evidence adduced on the last trial will be stated in the course of the opinion. The action was originally by the individual members of the society, and on the first appeal we decided that the suit was properly brought; but it was suggested in the opinion that, if the laws of the association provided for trustees in whom its property was vested, or who were to enforce obligations incurred to the society, such persons might sue as trustees of an express trust, and that, if the facts warranted it, the petition should be framed on that theory. At that time the constitution of the society was not before us. Acting on this suggestion, the petition was amended, and the present plaintiffs, who were the trustees of the society, were substituted as parties to the action. Upon the pleadings, as thus

amended, there was a trial, and the court instructed the jury to find for the plaintiffs. On the second appeal by the defendant, this judgment was reversed and the cause remanded. On a second trial, upon a submission to a jury under instructions, there was another finding and judgment against the defendant, and he has again appealed. On this, the present appeal, a reversal is sought: *First*, upon the ground that the plaintiffs as trustees have no power to maintain the action; *second*, that the jury should have been instructed as a matter of law that the society was dissolved or abandoned; *third*, that the dwindling of the membership to a number less than a constitutional quorum worked a dissolution; *fourth*, that the court should have assumed equitable jurisdiction and decreed a dissolution of the society, and distributed the assets among those entitled. These questions were presented by the defendant's instructions, which the court refused.

I. The question of the right of the plaintiffs to sue as trustees of the society lies at the foundation of the action, and ought to be first considered. The power of the members of an unincorporated society to confer on one or more of their number the care or custody of the common property, and the right to maintain suits in reference to the same, is not questioned. Whether such a right has been shown to exist in this case, either by the terms of the constitution of the order, or by some other action of the members of the society, is the question for decision. Article 10 of the constitution provides for a president, a secretary, a treasurer and three trustees. These constitute the officers of the society. That portion of article 13 of the constitution which is pertinent to the question reads: "The treasurer receives all moneys from the secretary, and shall keep an accurate account of all

receipts and payments with the secretary; the latter he may only make payments upon an order prepared by the secretary and signed by the president. He shall present at the meetings of the society, in January and July of each year, an accurate report, revised by a committee, of the financial condition of the society; also to give information at any other time at meetings of the society, when requested to do so. *The treasurer shall keep on hand the sum of $150 to meet any immediate payment. The surplus, if suitable, he shall hand over to the trustees. If any of the funds of the society are to be safely invested, it shall be the duty of the treasurer, in connection with the trustees, to attend thereto. The trustees are responsible for the careful administration of all loaned money, and shall likewise as the treasurer give sufficient security.''* How this article of the constitution should be construed is somewhat perplexing, for it must be confessed that it is crude and lamentably ambiguous. But we are inclined to the opinion that a fair construction of its language, when the aim or object of the society is considered, makes the trustees of the society the custodians and administrators of its funds. That the promoters of the society contemplated that the right to protect the common property should be vested in the aggregate membership, or that the title thereto should be so vested, is in our opinion unreasonable, and out of the usual order of things, because the prime object of such an association is to enlist as large a membership as possible, which would render the conduct of its business, and especially of litigation for the protection or preservation of the common property, both inconvenient and embarrassing. It is, therefore, reasonable to conclude from these considerations, and from the constitution itself, that its framers intended to and did intrust the management and custody of the common property to the three trustees provided

for in article 10, who were made next in executive authority to the president, and by article 13 were expressly constituted the trustees of the *surplus and all loaned money.* That the funds of the society in the hands of the defendant at the time of his removal must be regarded as surplus within the meaning of article 13, is, we think, fairly admissible. So long as the defendant remained treasurer, he was entitled to keep $150 on hand to meet immediate payment of demands against the society. To this extent only was the right of the trustees to control the money in his hands limited. When he was removed from office, he was no longer concerned in the disbursement of the money of the society, and from the moment of his removal it seems to us that all moneys in his hands became surplus money, and, under the provisions of article 13, belonged unconditionally and absolutely to the plaintiffs as the financial agents of the society. Besides this, the evidence tended to show that a portion of the property consisted of a note for $150 with accrued interest. This note was made payable to the trustees of the society. The defendant collected the amount, and refused to pay it over. Certainly as to this amount the plaintiffs were plainly, on another ground, the trustees of an express trust. We, therefore, conclude that the action was properly brought.

II. The defendant complains of the action of the court in modifying his third instruction, which presents the second point for decision. The instruction, as asked, reads: "The court instructs the jury that the constitution of the society in question is in law a contract among the members thereof, and that such contract can be abandoned at any time by the consent of such members; and, if the jury find from the evidence that, in August, 1887, a meeting of a majority of the members of the society was held, at

which meeting a resolution was passed dissolving the society and instructing the treasurer to distribute the funds of the society among the members, which the treasurer did, so far as he was able, after which meeting the society *failed to hold regular meetings and to carry out the purposes for which the society was organized, except to meet to provide means to carry on this lawsuit, and pay $8 in benefits to one Bente, then the jury are instructed that such acts constitute in law an abandonment of the society, and plaintiffs cannot recover.*" The court struck out that portion of the instruction in italics, and in lieu of it added the following: "In fact abandoned its organization and ceased to carry out the purpose for which the society was organized, plaintiffs cannot recover."

By the defendant's fourth instruction the jury were told that, if the members of the society had paid no dues since August, 1887, except for the purpose of carrying on this lawsuit, and paying $8 in benefits to one Bente, such facts might be taken into consideration in determining whether the society had been abandoned or not.

Conceding the facts to be as stated in the latter part of the instruction, the question is, was it the duty of the court to declare as a matter of law that the society had been dissolved or abandoned? It is settled in this state, and in many other jurisdictions, that neither the loss of all corporate property, nor a failure to hold regular meetings or to elect corporate officers, nor all combined, necessarily amount to a forfeiture, unless continued for a long term of years, which is not the case here. *State ex rel. v. Societe Republicaine*, 9 Mo. App. 114, and authorities cited. But when it is conceded that the objects of the corporation have been entirely abandoned, or when it appears that the power to resume business does not exist, then a legal dissolu-

tion may be declared. Applying these principles, which we think are applicable to unincorporated societies, it is clear that the modification made by the court was right. The efforts on the part of the trustees to recover from the defendant the money of the society could very properly be regarded by the jury as an honest attempt to carry out the aims of the order. It was only with this money, which constituted the assets of the society, that its benevolent purposes could be carried out, or at least fully carried out. Besides, the instruction involved matter occurring subsequently to the institution of the suit, which was not permissible. This will be more fully discussed further on in the opinion.

In further support of this idea of abandonment, and the consequent defeat of the right of recovery in the present case, it is urged that, as it appeared that there were only six members of the society at the time of the trial, and that there had not been more than six since the death of Strodtmen in December, 1891, and, as the constitution provided that seven members should constitute a quorum for the transaction of business, it was the duty of the court to direct a verdict for the defendant upon the ground that, as the society had lost the power to resume business, it was for this reason dissolved. If there had been only six members of the society when the suit was begun, then the defendant's position would be clearly right. But, as there were seven members when the litigation commenced, the argument goes for nothing. The right of the plaintiffs to recover must be determined by the status of the society at the time the suit was brought, and not by its status five years afterwards.

III. The last point argued is that the court should have assumed equitable jurisdiction, and decreed a dissolution and a distribution of the assets. Under our

view of the other questions this position is untenable. We have shown that the defendant rested under a legal liability to pay the money, and that the plaintiffs were the proper persons to demand and sue for its recovery. We are, therefore, unable to see how the defendant can avoid this liability by invoking the equitable powers of the court. As he was in default in the payment of the money, he was in no position to call for equitable interference in his behalf. The fact, that he might have the right, after the money was collected, to maintain an action in equity for the dissolution of the society and the distribution of its funds among its members, a question which we do not wish to be understood as deciding, would be no defense to the plaintiff's action, which rests on purely legal grounds.

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concur.