Argued May 24; affirmed July 6, 1938

## HENDRICKSON ET UX. *v.* BLOOM ET AL.

(80 P. (2d) 868)

Department 1.

C. L. *Marsters*, of Newport, and *Oscar Hayter*, of The Dalles, for appellants.

*W. H. Waterbury*, Toledo, for respondents.

BELT, J. In 1914 a subordinate body of the Oregon State Grange was organized at Rose Lodge—a small community center in Lincoln county, Oregon—under the name of Salmon River Grange No. 516. On September 8, 1915, Pleasant Deakin and Clara Deakin, his wife, executed and delivered a quitclaim deed to "P. Deakin, W. L. Bloom, and H. C. Starr, trustees of Salmon River Grange No. 516," conveying about 3/5 of an acre of land—which is the subject of this controversy. The deed contained the following limitation:

"The same to be Deeded and Conveyed unto the said P. Deakin, W. L. Bloom and H. C. Starr 'Trustees' of Salmon River Grange No. 516 or their successors in office, as long as said Salmon River Grange No. 516 shall exist. Should the said Grange cease to exist then to any regularly, delegated authority to control and have charge of said Hall, as long as said Hall continues to exist, should the Grange become defunct and afterward the hall be removed or destroyed, the ground shall revert to the grantor Pleasant Deakin."

During the year in which the grange acquired this real property a wooden two-story frame building was erected thereon to provide a meeting place. The grange continued to function until the year 1924 or 1925 but thereafter and until reorganized, no new officers were elected and members failed to pay their dues or hold meetings. During the years 1926 and 1927, the building was used for school purposes. In 1926, the executive committee of the grange, without authority, had a deed prepared conveying the property to the local school district, but it was never executed and delivered. During this period, while the building was being used by the local high school, the records of the grange stored therein were partly burned by students who were

"cleaning house." The charter issued by the national grange was taken by one of the local members to be framed but it seems was never returned. A copy of the charter, however, was secured by the local grange from the national organization. In 1928, the grange was reorganized and, according to some of the witnesses, continued to function until 1930 or 1931 when interest again died and meetings ceased for several years, or until the grange was once more reorganized in February, 1937, after the commencement of this suit. In the meantime, the building had become greatly dilapidated and unsafe for public meetings. The locks were gone from the doors and many of the window panes were broken.

On September 2, 1936, Pleasant Deakin and his wife, in consideration of $100, executed and delivered a quitclaim deed purporting to convey to the plaintiffs the land in controversy. Plaintiffs thereupon took possession of the property and had commenced dismantling the frame building when they were stopped by some irate citizens who apparently believed that the local grange was still the owner thereof. It was at this juncture that plaintiffs instituted the present suit to quiet title. From a decree in favor of the defendants, the plaintiffs appeal.

The decision of this case hinges upon whether Salmon River Grange No. 516, at the time of the execution of the deed to plaintiffs in 1936, had ceased to exist. If so, the title to the real property in question reverted to the original grantors. If the local grange was still in existence at such time, there could have been, of course, no reversion and the deed purporting to convey title to plaintiffs is of no effect. There are other subsequent limitations in the deed, but it is practically

conceded that they are void for indefiniteness and uncertainty and because of violation of the rule against perpetuities. The sole issue, therefore, is whether the grange had ceased to exist.

The deed did not provide for a reversion in the event the grange ceased to function but title was to be vested in the grantees "as long as said Salmon River Grange No. 516 shall *exist*." (Italics ours). Without doubt, this voluntary unincorporated association ceased to function for several years, but can it be said that such inactivity clearly indicated an intention to abandon the purposes of the organization? There was no surrender of the charter nor disposition of the property it owned. Salmon River Grange No. 516, like Rip Van Winkle, had been asleep for several years, but was not dead. It was merely dormant.

Section 1 of Art. XVIII of the Oregon State Grange by-laws provides, among other things, that a grange is dormant "whose membership has been reduced below the minimum number of members required by the constitution as charter members." Section 4 thereof makes it the duty of the master of the state grange, or his deputies, "to reorganize any dormant grange."

■ The mere fact that the grange did not have meetings for several years or elect officers does not mean that it has become dissolved. As stated in 7 C. J. S. 28:

"An association may be regarded as dissolved if it abandons the purposes of its creation and ceases to exercise its functions, especially where power to resume business does not exist. However, neither the loss of the association's property, nor a failure to hold regular meetings or to elect officers, nor all combined, necessarily amounts to an abandonment."

■■ No court should declare an abandonment of such an organization—devoted as it is to the betterment

of its members and to the public welfare—until it is clearly apparent, as said in 4 American Jurisprudence, p. 490, "that the organization has ceased to answer the ends of its existence and no other mode of relief is attainable." In our opinion, it has not been established by the greater weight of the evidence that Salmon River Grange No. 516 has abandoned the purposes for which it was organized. Although the grange, at times, had barely a spark of fraternalism left, there was sufficient life to bring about a reorganization and it is today functioning under the charter issued to it in 1914.

Appellants rely on *Strickland v. Prichard*, 37 Vt. 324, decided in 1864 and which involved the right of the local chapter of the Vermont Royal Arch Masons to recover funds which it had voted to trustees of the Bradford Academy to be returned when called for by the fraternal organization. The case hinged principally upon whether the local chapter of the Masonic organization had been dissolved by an abandonment of its purposes and a failure to function. In 1836 the chapter voted to dispose of the real and personal property belonging to it, being their "Masonic hall and the furniture and equipment of the order." After this, no meetings were held until 1859, at which time a petition was addressed to the state Royal Arch Chapter for a renewal of the charter. Relative to the local chapter, the court said:

"For more than twenty-three years no meeting of the chapter was held for any purpose, and no officers were elected; it had no place of meeting, it was without property or effects, and was without visible sign of existence."

There was much adverse legislation concerning Masonic bodies during this period and all charters

granted by the Vermont legislature to Masonic organizations were repealed. The state Royal Arch Chapter held no meetings from 1834 to 1849. The facts clearly showed an intention to abandon the purposes and objectives of the local chapter. We fail to see wherein the case supports the contention of the appellants that there has been a dissolution of the association in the instant case.

Both appellants and respondents cite *Kuehl v. Meyer*, 50 Mo. App. 648. That case was before the court three times on appeal. It was brought by a voluntary association to recover certain funds alleged to belong to it. The first time, the cause was reversed and remanded on a question of pleading: 35 Mo. App. 206. On the second trial, the court directed a verdict for the plaintiffs. The judgment was reversed and remanded for a third trial: 42 Mo. App. 474. On the third trial the jury found for the plaintiffs and the judgment based on the verdict was affirmed. It was urged, among other things, that the jury should have been instructed as a matter of law that the plaintiff society had been dissolved and its purposes abandoned. The court, on appeal, however, held that there was a question of fact as to whether the association had abandoned the purposes for which it had been organized. Both parties to this appeal may find comfort in some of the statements of the court in *Kuehl v. Meyer*, supra, but we think the decision, considered in its entirety, is not controlling here.

It must be apparent that the particular facts in each case determine whether there has been an abandonment of the purposes for which an association has been organized. The courts are not greatly at variance in their statements of legal principles concerning the dissolu-

tion of voluntary unincorporated associations. It is the application of such principles to a particular factual situation that presents difficulty.

We conclude that plaintiffs have not maintained the burden of proof in showing a clear intention to abandon the purposes for which Salmon River Grange No. 516 was organized.

It follows that the judgment of the lower court is affirmed.

BEAN, C. J., and ROSSMAN and KELLY, JJ., concur.