Nov. Term,
1830.

JOHN
v.
THE FARMERS
AND MECHAN-
ICS' BANK OF
INDIANA.

</div>

---

## JOHN and Another *v.* THE FARMERS and MECHANICS' BANK OF INDIANA.

A plea in abatement to an action by a corporation, that the charter is forfeited in consequence of a mis-user or non-user of the franchises, cannot be good; unless it show the forfeiture to have been judicially declared at the instance of the government.

If a promissory note be given to a company as a corporation, the maker is estopped from contending that, at the date of the note, the company was not a corporation.

A promissory note dated the 1st of *July*, 1826, payable to the President and Directors of the Farmers and Mechanics' Bank of *Indiana*, at their office of discount and deposit at *Lawrenceburgh*, on the 1st of *July*, 1829, is not entitled, under the statute, to days of grace; nor is it a paper in which the corporation is prohibited by its charter from holding an interest.

APPEAL from the *Dearborn* Circuit Court.

HOLMAN, J.—The President and Directors of the Farmers and Mechanics' Bank of *Indiana*, filed their declaration in debt against *John* & *Noble*, on a promissory note for 200 dollars, dated the 1st of *July*, 1826, and payable to the President, &c. on the 1st of *July*, 1829, at the office of discount and deposit of the said President and Directors in *Lawrenceburgh*; averring a de-

<div style="text-align:right">

*Saturday,*
*December 4.*

</div>

Nov. Term,
1830.

JOHN
v.
THE FARMERS
AND MECHAN-
ICS' BANK OF
INDIANA.

mand of payment, at their office of discount and deposit in Lawrenceburgh, on the 1st of July, 1829, and a demand of the makers of the note on the 30th of August, 1829. Breach, that the defendants had not nor had either of them paid, &c. The defendants pleaded in abatement, that, before the issuing of the writ in this case, the said President and Directors of the Farmers and Mechanics' Bank of Indiana had ceased to be, and were not a corporation in fact at the time the same was issued; the said corporation having long before that time ceased to elect their officers, and exercise their franchises, at the times and in the manner prescribed by their charter. To this plea there was a general demurrer, which the Circuit Court sustained. The defendants then demurred to the declaration, but their demurrer was overruled; and judgment was given for the plaintiffs. The defendants appealed to this Court.

In support of the plea in abatement, the appellants contend, that the general averment in the plea, that the President and Directors had ceased to be, and were not a corporation in fact, being admitted by the demurrer, forms a substantive cause of abatement, without any reference to the subsequent averments in the plea; that it includes every possible way in which a corporation might cease to exist, except perhaps by the death of all its members; that if, when this action was commenced, the President and Directors were not in fact a corporation, no matter by what means they had lost their corporate existence, they were not entitled to this action; and that if this general averment is to be taken in connection with, and qualified by, the subsequent averments in the plea, still the averments are sufficient to show that the corporation is no longer in existence; that although, in general, a non-user or mis-user of corporate powers, for a short time, might not, when presented in this collateral way, be considered sufficient to show the non-existence of the corporation, yet that a long neglect to elect its officers, and exercise its franchises, might be taken as an abandonment or surrender of its charter.

The first member of this argument, is defeated by the clear distinction that exists between pleading the death of an individual, and the dissolution of a corporation. In the case of an individual, it is sufficient to aver his death. The cause or manner of his death need not be averred. Not so with a corporate

body that has no natural existence, but which exists only by operation of law. The death of an individual is a simple fact. The dissolution of a corporation is a matter of law arising from facts; and the facts that lead to the legal conclusion that the corporation is dissolved, must be averred in the plea. The general averment in this plea, that the President and Directors had ceased to be, and were not a corporation in fact, when the writ was sued out, would not constitute a good plea. To give it a legal form, it must be taken in connection with the subsequent averments which give the reasons for the general conclusion, that they have ceased to exist as a corporation. Then, the validity of this plea rests upon the legal conclusion that is to be drawn from the fact, that the President and Directors had, for a long time before the writ was sued out, ceased to elect their officers, or to exercise their franchises, at the times and in the manner prescribed by their charter. The mis-user or non-user here pleaded, is said to have existed for a long time: but if this time had no other limitation, it could not be presumed to run further back than the date of the note on which the action is founded; as it has been decided that the appellants, by contracting with the appellees as a corporation, are estopped from saying that they were not at that time a corporation. *The Dutchess Cotton Manufactory* v. *Davis*, 14 Johns. R. 238. See, also, *Henriques* v. *The Dutch West India Company*, 2 Ld. Raym. 1532.—*Hughes* v. *The Bank of Somerset*, 5 Litt. 45. But time, thus generally pleaded, is altogether uncertain and indefinite. No legal construction can extend the mis-user or non-user, averred in this plea, beyond an indefinite or mere point of time. And such a mis-user or non-user would not be sufficient to authorise proceedings for a seizure of the corporate franchises. *The People* v. *Runkel*, 9 Johns. R. 147. But this plea does not aver an absolute non-user of the franchises at any point of time, but a neglect to exercise them at the times, and in the manner, prescribed by the charter. In the case of *Slee* v. *Bloom*, 5 Johns. C. R. 366, as reviewed in the Court of Errors, 19 Johns. R. 456, it was determined, that a neglect to elect the corporate officers for several years, a sale of all the property of the corporation, and an evident determination not to proceed in the business contemplated by their charter, amounted to such a surrender of the franchises as might be

47

taken advantage of by a creditor. But, taking this plea in its fullest extent, it shows no more than a mis-user or non-user of the franchises, which of itself has never been considered such a dissolution of a corporation as could be taken advantage of in a collateral way. If it amounts to a forfeiture of the corporate rights, that forfeiture must be judicially determined and declared, at the instance of the government, before it can be pleaded by an individual. *Trustees of Vernon* v. *Hills*, 6 Cowen, 23. See, also, the above cases of *Slee* v. *Bloom*, and *Hughes* v. *The Bank of Somerset*. The conclusion is, that the plea is insufficient to abate the writ, and that the demurrer thereto was properly sustained.

The appellants contend further, that the declaration is insufficient to maintain the action; that the note declared on was entitled, under the act of assembly, to three days of grace, in like manner as an inland bill of exchange; and that the demand at the office of discount and deposit in *Lawrenceburgh*, on the day of payment mentioned in the note, was three days before the true day of payment; and that the demand, subsequently made of the payees personally, was not a compliance with the law, not being made at the place of payment mentioned in the contract. On examining the act of assembly on this subject, R. C. 1824, p. 330, and the decision of the Court of Appeals of *Kentucky* in *Stapp* v. *Anderson*, 1 Marsh. 535, on a similar act, we are of opinion that the note is not embraced in the provisions of the act, and is not entitled to days of grace. Nor is it a paper, as the appellants contend, in which the corporation is prohibited by its charter from holding an interest. It does not purport to have been an article of traffick; nor does it appear that the corporation traded for it. It is introduced by the President and Directors, as evidence of a debt due to them by the appellants; and there is nothing in that clause of their charter, by which they are restrained from trading in any thing but bills of exchange, &c., that prohibits them from taking a note, or any other instrument of writing, to secure the payment of a debt. In the case of *The Bank of the United States* v. *Norton*, 3 Marsh. 422, it was decided, that a restraining clause in the charter of the Bank of the *United States*, similar to the clause under consideration, did not prohibit that Bank from purchasing a promissory note, and receiving it by assignment, and

maintaining an action upon it. But here there was no purchase in any sense of the term. The note is only evidence of a promise to pay money, presumed to be due from the payees, which promise was susceptible of proof by other evidence, if the note had not been given.

SCOTT, J. was absent.

*Per Curiam.*—The judgment is affirmed, with 2 *per cent.* damages and costs.

*Dunn* and *Caswell*, for the appellants.

*Stevens* and *Stapp*, for the appellees.