Ethan JACKSON, Franklin L. Jackson, Brady R. Justice, Jr., and Lowell A. Peters, Appellants–Plaintiffs,

v.

Ernest DeFABIS, Julius DeFabis, Michael DeFabis, Phillip F. DeFabis, Charles T. Heck, Marvin L. King, Roy F. Miller, Francis E. Preston, and Harold O. Preston, Appellees–Defendants.

No. 30A01–8904–CV–120.

Court of Appeals of Indiana, First District.

April 16, 1990.

Ordered Published April 26, 1990.

Christopher Kirages, Patricia Seasor Bailey, Stark Doninger Mernitz & Smith, Indianapolis, for appellants-plaintiffs.

Judy L. Woods, Kroger, Gardis & Regas, Indianapolis, for appellees-defendants.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Ethan Jackson, Franklin L. Jackson, Brady R. Justice, Jr., and Lowell A. Peters (collectively, Guarantors) appeal the summary judgment entered against them and in favor of Ernest DeFabis, Julius DeFabis, Michael DeFabis, Phillip F. DeFabis, Charles T. Heck, Marvin L. King, Roy F. Miller, Francis E. Preston, and Harold O. Preston (collectively, Holders) in the Holders' action seeking recovery from Guarantors on their guaranties to notes in default.

We affirm.

## FACTS

On March 25, 1985, Allied Acquisition, Inc. (Allied) and Affiliated Grocery Companies, Inc. (Affiliated) entered into a share purchase agreement whereby Allied agreed to purchase all outstanding common shares of Affiliated from Holders. Allied issued promissory notes to the Holders as part of this purchase and Allied's obligation under the notes was personally guaranteed by the Guarantors. The notes were repayable in three installments to be paid with accrued interest on June 10 of 1986, 1987, and 1988. Each of the notes provided Allied a right of setoff against the principal and interest payment for any damage, loss, liability, cost, or expense for which Allied was permitted indemnification under the share purchase agreement. However, the notes required Allied to give written notice of its intent to exercise its right of setoff against any principal and interest payment. The notes also provided the Holders an opportunity to make written objection to the proposed setoff and provided for arbitration in the case of a dispute about the right of indemnification or the amount of the proposed setoff.

Allied provided a notice on May 27, 1988, that it intended to exercise its right of setoff against the June 10, 1988 payments to the Holders and that the claimed setoff exceeded the total of the final payment due each Holder. Each of the Holders sent Allied a written objection to the proposed setoff. Allied did not pay the Holders the final payments due under the notes on June 10, 1988.

On August 5, 1988, the Holders filed suit alleging Allied was in default on the notes and seeking recovery against the Guarantors of the notes. On October 31, 1988, the Holders filed a motion for summary judgment, which the trial court later granted after a hearing. The trial court concluded: (1) the notice of setoff sent by Allied was untimely, (2) Holders, by their past conduct, had not waived their right to strictly enforce the terms of the notes concerning setoff, (3) Guarantors had failed to show Holders had constructive notice of the setoff prior to Allied's letter of May 27, 1988, and (4) time was an essential and material element of the notes. The trial court further concluded Allied was in default on its obligations on the June 10, 1988, payment, Guarantors had guaranteed Allied's obligations, and the dispute should not be allowed to proceed to arbitration on the merits. The trial court, therefore, ordered judgment for each of the Holders, individually, against each of the Guarantors, individually, for the amounts due on the notes. Further facts will be provided as necessary.

## ISSUES

1. Whether the trial court erred in concluding Allied did not give timely notice of setoff to the Holders?

2. Whether the trial court erred by not ordering the parties to proceed to arbitration?

3. Whether the trial court erred in concluding there was no issue of material fact regarding whether the Holders, by their past conduct and by their failure to object to the lack of timeliness of the May 27, 1988, notice, waived their rights to require strict adherence to the terms of the promissory notes and to litigate the issue of the untimeliness of the setoff notice?

4. Whether the trial court erred in concluding there was no issue of material fact regarding whether the parties to the notes regarded time as being of the essence?

5. Whether the trial court erred in concluding Guarantors did not have constructive notice of the setoff?

## DISCUSSION AND DECISION

When reviewing a grant of summary judgment, we use the same standard of review as the trial court: summary judgment is proper only when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Seiler v. Grow* (1987), Ind.App., 507 N.E.2d 628, 630, *trans. denied.* In determining whether a genuine issue of material fact exists, we examine the pleadings, depositions, answers to interrogatories, admissions and affidavits filed with the court in the light most favorable to the non-movant. *Chambers v. Central School District School Board of Greene County* (1987), Ind.App., 514 N.E.2d 1294, 1296. The trial court voluntarily entered findings of fact and conclusions of law when it granted Holders' motion for summary judgment. Those findings do not control our review, since we use the same standard as the trial court did, *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210, and since findings of fact are unnecessary on decisions of summary judgment motions. *See* Ind. Trial Rule 52(A).

*Issue One*

■ Guarantors contend the trial court erred in finding the notice of setoff which Allied sent to the Holders on May 27, 1988, was untimely according to the setoff provisions of the notes. The notes contained the following specific language governing the right of setoff:

"The Holder hereby agrees that Allied shall have the right to a set off and shall receive a credit against the principal and interest payable under this Note in the amount of any damage, loss, liability, cost or expense for which Allied, Affiliated Grocery Companies, Inc.... are entitled to indemnification pursuant to the terms and provisions set forth in Article IX of that certain Share Purchase Agreement dated March 25, 1985, by and among Allied, Affiliated and the shareholders of Affiliated. Not less than fifteen (15) days prior to the due date of any payment hereunder (including applicable grace periods) with respect to all or a part of which Allied intends to exercise its right of set off, Allied shall give written notice of such intent together with an explanation of the indemnifiable matter; and, if the Holder fails to object in writing to such set off within five (5) days of such notice, the set off claimed in such notice shall be deemed to have been accepted by the Holder and Allied shall be entitled to a full credit therefor against such portion of the payment or payments for which set off is claimed. In the event that the Holder objects in writing to the proposed set off within such five (5) day period and the parties are unable to resolve the dispute, the amount of the proposed set off and the right of indemnification to which it relates shall be submitted to arbitration in accordance with the procedures set forth in Section 4 of this Note."

Record at 13, 18, 23, 28, 33, 38, 43, 48.

In its Finding of Fact 4, the trial court found the pertinent due date of the 1988 payment was June 10, 1988. In Conclusion of Law 9, the court concluded the notice of setoff sent by Allied on May 27, 1988, was given only fourteen (14) days before the due date and was, therefore, untimely. Guarantors contend the language of the notes "was clearly intended to add a period of time after the due date for payment in the calculation of the notice period." Appellant's Brief at 24. Guarantors point to the note language, "[n]ot less than fifteen (15) days prior to the due date of any payment hereunder (including applicable grace periods) ... Allied shall give written notice of" the intent to exercise its right of setoff, to support their view.

■ We reject Guarantors' contention. Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. *Union Miniere v. Parday* (1988), Ind.App., 521 N.E.2d 700, 702–03; *Scott v. Anderson Newspapers, Inc.* (1985), Ind.App., 477

N.E.2d 553, 559, *trans. denied.* It is clear from the face of the notes that payment was due on June 10, 1988, and that notice of setoff must have been given fifteen (15) days prior to that payment date. Because the contract terms are clear and unambiguous, neither we nor the trial court need construe the contract or look to extrinsic evidence of, or business practices as to, grace periods.[1]

Furthermore, no definition of any specific grace period is provided in the notes. If reasonably possible, we try to construe contractual language so as to give effect to each part. *Scott,* 477 N.E.2d at 562. However, the failure of the parties here to define their intent as to a grace period renders the language inapplicable and mere surplusage, since the contract is unambiguous.

■ Guarantors also contend the language of the notes should be read to include a common law grace period of three days, after the due date for payment, in the calculation of the notice period. Guarantors point to law dictionary definitions which define grace period as a three day period, beyond a contractual due date, in which a debtor may make payment. Guarantors concede no Indiana cases define "grace period" or outline the length of a common law grace period. In fact, our supreme court has held that a three day grace period does not apply to ordinary promissory notes that are not payable at a bank. *See e.g., Luce v. Shoff* (1880), 70 Ind. 152, 158; *Benson v. Adams* (1879), 69 Ind. 353, 355; *John v. The Farmer's and Mechanic's Bank of Indiana* (1830), Ind., 2 Blackf. 367, 370. We reject Guarantors' argument that a common law grace period should be read into the promissory notes.

■ In its Conclusion of Law 9, the trial court carefully reviewed Indiana law on computation of time for performance of an action to take place a specific number of days before a known future date. The court concluded that under either the general Indiana rule of excluding one of the terminal days, *see* IND. CODE § 34-1-61-1; Ind. Trial Rule 6(A); *Williams v. Chambers* (1926), 85 Ind.App. 404, 154 N.E. 295; *American National Bank of Indianapolis v. Service Life Insurance Company* (7th Cir.1941), 120 F.2d 579, or the clear days rule, *see Liberty Service, Inc. v. McKim* (1959), 129 Ind.App. 464, 157 N.E.2d 582, Allied's May 27, 1988, setoff notice to the Holders was given less than fifteen (15) days before the June 10, 1988, payment due date. The court concluded the notice was, therefore, untimely as a matter of law. We affirm the trial court's conclusion.

*Issue Two*

■ Guarantors argue because Allied sent timely notice of setoff, Holders timely and properly objected to setoff, and the parties could not resolve their dispute, the trial court erred by refusing to order Guarantors and Holders to arbitration. While we agree with Guarantors as to what the conditions precedent to arbitration were, we cannot agree that all conditions precedent were met. In *Issue One* we held Allied's setoff notice was untimely. Thus, all conditions precedent to arbitration were not met. Furthermore, the note language indicates the parties agreed to arbitrate only the matter of Guarantors' right to indemnification and the amount of any proposed setoff. For both reasons, we hold the trial court did not err in adjudicating Holders' action to recover on Guarantors' guaranties and in refusing to order the parties to arbitration on the merits.

*Issue Three*

Guarantors assert the trial court erred in concluding there was no issue of material fact regarding whether Holders had waived their right to require strict adherence to

---

1. Even if we were to construe the contractual language, we would find that the parenthetical phrase "including applicable grace period" clearly refers to the immediately preceding phrase "prior to the due date of any payment hereunder," instead of to the later language "Allied shall give written notice of" intent to set off against the June 10, 1988, payment. The parenthetical phrase merely clarifies the preceding phrase without changing its meaning. Thus, the parenthetical language is mere surplusage.

the terms of the promissory notes. Guarantors contend there was a material, factual issue regarding waiver because Holders previously had permitted late payment of the June 10, 1986, installment and had permitted setoff of the June 10, 1986, installment without notice of setoff. According to Guarantors, such facts lead to an inference Holders accepted Allied's untimely, defective performance, thereby relinquishing the right to require strict adherence to the terms of the notes.

■ While the existence of facts necessary to constitute a waiver of a contract provision is ordinarily a question of fact, *Phillips v. Green Street Corp.* (1968), 143 Ind.App. 30, 38, 237 N.E.2d 590, 595, *trans. denied; Lincoln National Life Insurance Co. v. Sobel* (1941), 110 Ind.App. 331, 349, 35 N.E.2d 121, 128, the question of the facts necessary to constitute a waiver is a matter of law. *Lincoln National Life Insurance Co.* (1941), 110 Ind.App. at 349, 35 N.E.2d at 128, *trans. denied* (citing *Baxter v. Metropolitan Life Insurance Co.* (1925), 318 Ill. 369, 149 N.E. 243). The fact that the Holders accepted a late 1986 installment which had been setoff without notice was not disputed. Only the inference and legal conclusions to be drawn from this fact were argued. Thus, the question of waiver was a proper consideration for the court to consider as a matter of law on summary judgment.

■ The trial court concluded Holders had not waived their right to insist on timely payment and timely notice of set off merely by the Holders' acceptance of the late 1986 payment which had been set off without advance notice. We agree with the trial court. Acceptance of one defective performance under a contract does not constitute a continuing acceptance of defective performance which would operate as a waiver of a contract breach. *See Phillips,* 143 Ind.App. at 38, 237 N.E.2d at 595 (citing Restatement, *Contracts,* § 300 at 444).

Guarantors also contend there was a material issue of fact regarding waiver because (1) Holders' letters of objection to the May 27, 1988, setoff notice did not object to its lack of timeliness, (2) some of the Hold-

er's objections indicated the Holders would meet with Allied to resolve the dispute to avoid arbitration, and (3) one Holder, who may have been acting as an agent for the others, made a specific objection to the setoff for a reason other than its lack of timeliness. Guarantors argue Holders had both a duty and an opportunity to object to the untimeliness of the setoff notice when Holders sent the response letters. Because Holders did not object to the untimeliness in the response letters, Guarantors argue, Holders accepted Allied's untimely, defective performance and a waiver occurred.

The trial court did not address Guarantors' present argument that the Holders, (1) by failing to expressly object in their objection letters to the untimeliness of Allied's May 22, 1988, setoff notice, and (2) by indicating Holders would try to resolve the setoff dispute with Allied, waived their right to raise the untimeliness issue in their action against Guarantors.

Several problems exist with Guarantors' argument. First, they do not define which contract right or rights have been waived by Holders' actions after their receipt of the setoff notices. Second, they do not point to any contractual language or common law rule which would create a duty for Holders to object to the untimeliness of the setoff notice in their response letters. Third, Guarantors appear to be arguing Holders were estopped by their actions from litigating the issue of untimeliness, but Guarantors do not discuss the manner in which each element of estoppel was met by the facts.

As to the contract right which Holders may have waived by their actions, Holders' response letters and later actions clearly could not waive their contractual right to object to the setoff. Guarantors do not appear to argue Holders waived their right to receive payment without setoff on June 10, 1988. Neither do Guarantors appear to argue Holders waived their right to attempt to resolve any dispute about Guarantors' right to indemnification or the amount of setoff through discussions or arbitration.

■ Guarantors appear to be arguing only that Holders waived their right to treat the contractual provisions of the notes as having been breached by Guarantors, and Holders thereby waived their right to raise as an issue in the litigation the untimeliness of the setoff notice. Such a right is not a contract right, but a right of access to the legal system. If Guarantors are asserting Holders' response letters were "waivers" of Holders' right to litigate the issue of the untimeliness of the setoff notice, then Guarantors' argument is based on "estoppel."

■ "Waiver is an intentional abandonment or relinquishment of a known right; with reference to a breach of contract, it includes giving up the right to treat the contract as breached by the other party." *Waxman Industries v. Trustco Development Co.* (1983), Ind.App., 455 N.E.2d 376, 378. A party's mere silence or acquiescence is not a waiver of a right absent that party's duty to speak or act. *American National Bank & Trust Co. v. St. Joseph Valley Bank* (1979), 180 Ind.App. 546, 554, 391 N.E.2d 685, 687. The language of the notes merely required the Holders to object in writing to the setoff and did not require the Holders to delineate their objections. Thus, Holders did not waive their right to raise the untimeliness issue in litigation by failing to specify that objection in their response letters objecting to the setoff.

The doctrines of "waiver" and "estoppel" are similar, but differ in that "a person who is in a position to assert a right ... may by his own words or conduct, and without reference to any act or conduct of the other party affected thereby, waive such right ..." whereas "[a]n estoppel

does not arise from the words or conduct of one party alone as a waiver does. To create an estoppel, the words or conduct of the party estopped must be calculated to mislead the other party, and such other party must be misled thereby and induced to act in such a way as to place him at a disadvantage." *Lafayette Car Wash, Inc. v. Boes* (1972), 258 Ind. 498, 501–02, 282 N.E.2d 837, 839–40 (quoting *Templer v. Muncie Lodge I.O.O.F.* (1912), 50 Ind.App. 324, 333–35, 97 N.E. 546, 549–50).

■ Guarantors failed to show that there were material factual questions of whether Holders' words or conduct were calculated to mislead Allied and Guarantors, that Allied and the Guarantors were misled, and that Allied and the Guarantors were induced to act in such a manner as to place themselves at a disadvantage. Even if we assume *arguendo* that material factual disputes exist regarding whether Holders' response letters and subsequent actions were calculated to and did mislead Allied and Guarantors into believing Holders had accepted Allied's defective performance of sending untimely notice, no material factual issue existed of Allied or Guarantors having put themselves at a disadvantage by such induced belief. Guarantors are alleging Holders are estopped from litigating the untimeliness issue, yet Guarantors show no facts indicating they placed themselves at a disadvantage by believing Holders would not litigate the issue.[2] We affirm the trial court's holding that no material factual issue of estoppel or waiver of Holders' right to litigate the untimeliness issue existed.[3]

*Issue Four*

■ Guarantors contend there was an issue of material fact regarding whether

---

**2.** Even though Holders objected to the merits of the setoff, they were not estopped from raising a later objection to the untimeliness issue during litigation. *See e.g.,* 17A C.J.S. *Contracts* § 506(1)(a) (1963) (by accepting an untimely, and therefore defective, performance, party does not waive the right to recover damages for the delay). *See also* Ind. Trial Rules 8(c), 15, and 16(A)(2) (an affirmative defense, such as a statute of limitations defense may be raised after an answer on the merits by amendment of pleadings during a pretrial conference, before a

responsive pleading is served by leave of court, or even after trial of the issue by express or implied consent).

**3.** We need not address Holders' argument that the share purchase agreement non-waiver provisions applied to the promissory notes or Holders' argument that Allied was the party who first breached the contract. Our disposition of this case does not require us to look at the merits of the litigation.

the parties to the notes regarded time as being of the essence. As indicators time was not of the essence, Guarantors rely partly on their above argument that a grace period of unspecified length existed and defined only a general time frame for the required setoff notice. Guarantors also rely on Holders' acceptance of the late 1986 installment without notice of setoff. The trial court concluded there was no factual dispute and as a matter of law time was an essential and material element of the notes.

We have already rejected Guarantors' argument that a grace period applied to the setoff notice. The setoff provisions of the notes clearly specified short time frames of fifteen and five days within which, respectively, notice of setoff or notice protesting setoff was to be sent. We have rejected the argument Holders, by their acceptance of the 1986 payment late and without advance setoff notice, waived their contractual rights to receive timely payment and timely setoff notice. By extension, we find Holders' acceptance did not indicate they no longer viewed timeliness to be essential to future payments and notices. We affirm the trial court's determination that, as a matter of law, time remained an essential material element of the notes.

*Issue Five*

■■■ Guarantors argue Holders had constructive notice of setoff and the trial court erred in holding otherwise. Guarantors point to a conclusory statement in Lowell Peter's affidavit, "that the written set-off was merely a confirmation of prior notice to the plaintiffs," Record at 246, as evidence that all of the Holders, before the May 27, 1988, written setoff notice, had constructive notice Allied planned to set off a tax refund against the June 10, 1988, payment. Lowell Peter's affidavit alleges no facts to support his conclusory statement.

The trial court found that George Davis' affidavit alleged he had contacted one of the Holders about the tax refund problems and that Lowell Peters' affidavit indicated the tax refund problem had been disputed between the parties for most of the year prior to June 10, 1988. We agree with the trial court's Conclusion of Law 11:

"While both of these affidavits attempt to show knowledge on the part of the Plaintiffs of the matters which ultimately led Allied to claim a right of setoff, at best they show that Charles Heck (one of the nine Plaintiffs) knew about the matters. Nothing in either of the affidavits states that any of the Plaintiffs were ever advised either orally or in writing of any plan of Allied to setoff against the June 10, 1988 payment due Plaintiffs. The Court concludes that Defendants have failed to demonstrate that Plaintiffs even had any notice of the setoff prior to Allied's May 27 letter."

Record at 309. We affirm the trial court's determination.

### CONCLUSION

We affirm the trial court's grant of summary judgment to Holders. We hold the trial court did not err in concluding Allied sent an untimely notice of setoff, time was of the essence of the contract between the parties, Holders did not have constructive notice of the setoff, Holders did not waive their right to litigate the untimeliness issue, and the parties should not have been ordered to arbitration.

Affirmed.

ROBERTSON and STATON, JJ., concur.