Arthur M. HEREDIA and Peggy A. Heredia, Appellants–Defendants.

v.

Neil F. SANDLER and Carol Sandler, Appellees–Plaintiffs.

No. 92A05–9205–CV–154.

Court of Appeals of Indiana, Fifth District.

Jan. 20, 1993.

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, for appellants-defendants.

Thomas J. Goeglein, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellees-plaintiffs.

BARTEAU, Judge.

Arthur and Peggy Heredia sought return of the earnest money given in connection with an offer to purchase the home of Neil and Carol Sandler. The trial court granted summary judgment in favor of Heredias and ordered the $1,000 earnest money to be returned to them. However, the court vacated this order on Sandlers' Motion to Correct Error. Heredias appeal, arguing that summary judgment was properly granted in their favor.

We affirm, holding that material issues of fact remain, making summary judgment inappropriate.

## FACTS

Sandlers listed their home for sale with Roth & Wehrly Realtors. Their listing agent was Edward LaRocque. The house was shown to Heredias by Janet Gerke, a sales associate of Bradley Realty. The Heredias offered to purchase the house for $125,000. Their offer was contingent upon, among other things, obtaining the required financing, the right to inspect the real estate and the contingency that the lower level be free and dry of water leaks. The offer, along with $1,000 earnest money, was submitted to Gerke, who submitted it to LaRocque, who in turn gave it to the Sandlers. Sandlers submitted a counter-offer to Heredias which differed from the Heredias' offer only in that the purchase price would be $133,000.

The Heredias accepted the counter-offer and proceeded to have the house inspected by James Goodard who prepared a building analysis report. (R. 120–126). Among the problems the inspection revealed were some signs of basement dampness and that the heat exchanger on the furnace was cracked and the furnace would have to be replaced. Several miscellaneous problems were also noted.

According to the Purchase Agreement, if the inspection report revealed a defect in the condition of a system described in the Agreement, Heredias were to give the Sandlers a copy of the report within five days of receiving it. Sandlers were then required to repair the defect before closing. Generally, either party could terminate the agreement if Sandlers were unable or unwilling to cure the defect(s).

Within five days after receiving the inspection report, Heredias prepared an "Inspection Amendment" and gave it to Gerke, who in turn gave it to Sandlers. The document was abstracted from the inspection report by Heredias and contains a laundry list of "repairs" Heredias wanted Sandlers to do before closing, including replacing the furnace.[1] Sandlers met with Heredias to discuss the alleged defects shortly after receiving the Amendment. Initially, Sandlers refused to do any of the requested repairs except to replace the furnace. Neil Sandler received a bid of $1,485 for a furnace which would, according to a reputable contractor, be sufficient for the house. Sandlers also offered to give that money to the Heredias to use toward the purchase of a higher quality furnace if they so desired.

Not satisfied with this offer, Heredias, through counsel, contacted LaRocque, the listing agent, and informed him that they wanted their earnest money returned to them. The earnest money was not returned. Sandlers, also through counsel, agreed to replace the furnace and to repair exhaust fans, the smoke detectors and the garage. For the first time, the Sandlers objected to the "Inspection Amendment" and argued they were entitled to receive a copy of the actual inspection report. According to Sandlers, they were not required to make any repairs because the five days in which the Heredias had to provide them

---

1. The list of repairs included the following: replace furnace; replace defective shingles; provide attic and soffit ventilation; provide attic insulation; unplug downspouts, cap tiles, provide splash blocks; repair basement water leaks; clean out vents and chimney and provide weather caps; service humidifier and water conditioner; locate well head/casing and correct if not above ground; repair exhaust fans; repair smoke detectors; repair/replace dishwasher; add/change to electronic ignition on gas grill and eliminate standing pilot; replace dryer vent hood with flapped one; repaint mildewed porch ceiling; open painted/over soffit vents; refasten 3 section GDO track to ceiling; repair hole in garage.

with the inspection report had expired. Heredias continued to refuse to close the transaction. Sandlers sold the home to a third party.

Sandlers initiated this lawsuit by suing Heredias for liquidated damages of 5% of the purchase price ($6,650), attorney fees and costs. Heredias counter-sued for return of their earnest money, attorney fees and cost. The trial court granted Heredias' motion for summary judgment and ordered Sandlers to return the deposit and to pay attorney fees and costs. The trial court then vacated the judgment by granting Sandlers' motion to correct error. Heredias appeal from the grant of the motion to correct error.

### DISMISSAL

■ Although Sandlers' have made no formal motion to dismiss, they argue in their brief that the appeal should be dismissed; therefore, we first address this issue. Sandlers assert that, in essence, Heredias are appealing the denial of their motion for summary judgment, which is not a final appealable order. According to Sandlers, we should dismiss this appeal because Heredias are attempting to pursue an interlocutory appeal without following the required procedure in Ind.Appellate Rule 4(B)(6). Sandlers also argue they are entitled to appellate attorney fees because of Heredias' failure to follow the proper procedure for bringing an interlocutory appeal.

Heredias appeal the grant of a Motion to Correct Error. Therefore, this appeal is governed by Ind.Trial Rule 59 and App.R. 4. Trial Rule 59(F) provides in part:

> Any modification or setting aside of a final or an appealable final order following the filing of a motion to correct error shall be an appealable final judgment or order.

Sandlers admit that the grant of summary judgment would have been an appealable final order. The setting aside of the grant of summary judgment is therefore appealable according to T.R. 59(F). This is reiterated in App.R. 4(A), which provides in part:

Appeals may be taken by either party from all final judgments of circuit, superior, probate, criminal, juvenile, county and where provided by statute for municipal Courts. *When a Motion to Correct Error is used a ruling or order by the trial court granting or denying the same shall be deemed a final judgment, and an appeal may be taken therefrom.* (emphasis supplied). Therefore, Sandlers' argument fails and Heredias may pursue this appeal. Sandlers' request for appellate attorney fees likewise fails.

### SUMMARY JUDGMENT

■ At the heart of this dispute is whether Heredias had a right under the Purchase Agreement to terminate the Agreement and refuse to buy Sandlers' home. Construction of an unambiguous written contract is generally a question of law for the court, making summary judgment particularly appropriate in contract disputes. *Bicknell Minerals, Inc. v. Tilly* (1991), Ind.App., 570 N.E.2d 1307, *reh'g denied, trans. denied.* Where the terms of a contract are clear and unambiguous, the terms of the contract are conclusive and this court merely applies the contractual provisions. *Jackson v. DeFabis* (1990), Ind.App., 553 N.E.2d 1212. A contract is ambiguous only when reasonably intelligent people could honestly find its provisions susceptible of more than one interpretation. *Kitchen Jewels, Inc. v. Beck* (1987), Ind.App., 513 N.E.2d 1246.

This dispute centers on § 16.01 of the Purchase Agreement, which provides:

16.01 Buyer's Right to Inspection.

(a) Buyer may have the Real Estate inspected, and Seller agrees to make the Real Estate available for such inspection. All inspections and written reports of them (except those required by a lender in connection with a mortgage loan) shall be made within fifteen (15) days after the date this Agreement becomes effective.

(b) Inspections shall be at Buyer's expense by qualified, independent inspectors selected by Buyer. An inspector is considered "independent" if the inspector is unrelated to the parties, and will not

realize direct or indirect financial benefit (other than receipt of a fee for services rendered) as a result of performing an inspection. *The inspections may include, but are not limited to, the following systems and items: electrical, gas, central heating, central air conditioning, and plumbing (including sewage disposal and sump pumps) systems; well; built-in appliances; roof; walls; ceilings; floors; foundations; basement; crawl space; hazardous or toxic substances; and wood eating insect infestation.* Buyer may also have inspections of a septic system and the quality of water in a well on the Real Estate to determine whether they satisfy standards imposed by the Board of Health of the county in which the Real Estate is located. Inspections required by a lender do not fulfill Buyer's right of inspection under Subsection 16.01.

*(c) If an inspection report reveals a defect in the condition of a system or item described in Subsection 16.01(b), which could reasonably interfere with Buyer's intended use of the Real Estate, Buyer shall give Seller a copy of such report within five (5) days after receiving it. Prior to closing, Seller shall cure each such defect to Buyer's reasonable satisfaction subject to Subsection 16.01(d). If Seller is unable or unwilling to do so, either party may terminate this Agreement.* However, Buyer may WAIVE Seller's obligation to cure and proceed to closing by giving Seller notice to that effect within fifteen (15) days after Seller gives Buyer notice of termination. Upon such waiver, this Agreement shall remain in effect, but without Seller's obligation to cure. Upon any termination, all earnest money shall be returned without delay.

(d) Neither of the parties shall have the right to terminate this Agreement if: (1) the cost of curing all defects contained in the inspection report does not exceed $100.00 (which cost shall be paid by Seller); or (2) the defect as to which a right to terminate is claimed is one which Sell-

er disclosed to Buyer in writing, at or before Buyer's execution of this offer. (emphasis supplied).

■ Heredias argue that the question of whether the "Inspection Amendment" complied with the terms of 16.01(c) is a question of law for the court. Accordingly, so they argue, the trial court's initial determination that the Amendment did in fact comply with the Agreement was correct. They further argue that the only relevant material fact is whether there were defects in the property. According to Heredias, because it is undisputed that defects did exist, they were entitled to terminate the Agreement when Sandlers refused to make all the requested repairs.

We agree that the question of whether the "Inspection Amendment" complied with the contract is a question of law. In this regard, the words of the contract are clear: "if an *inspection report* reveals a defect in the condition of a system or item described in Subsection 16.01(b) ... Buyer shall give Seller a copy of *such report* within five (5) days after receiving it." The only report to which this section refers is an *inspection report.*

■ Heredias concede that the "Inspection Amendment" is not the inspection report. However, they argue that real estate agents and brokers in Allen County use the Inspection Amendment as a matter of course to comply with the standard provision contained in § 16.01. They rely on extrinsic evidence—the affidavit of James Goodard—to support this argument. However, when the terms of the instrument are susceptible of a clear and unambiguous construction, extrinsic evidence is inadmissible. *South Bend Carpetland U.S.A. v. Sandock* (1991), Ind.App., 570 N.E.2d 123, 125, *reh'g denied, trans. denied; City of Evansville v. Old State Utility* (1990), Ind. App., 550 N.E.2d 1339, 1342. Further, this court will not rely on, nor are we bound by, an erroneous construction placed upon the contract by a party. *City of Evansville,* 550 N.E.2d at 1342. Thus, although it is undisputed that real estate agents often use the inspection amendment instead of an inspection report to comply with § 16.01,

this does not govern our decision here. Rather, we are bound by the words of the contract which require a copy of the inspection report to be submitted to the buyer.

Our discussion does not end here. Heredias argue that Sandlers are estopped from asserting their failure to give Sandlers a copy of the inspection report. They argue that Gerke, acting as Sandlers' agent, instructed Heredias to complete the Inspection Amendment form. According to Heredias, Gerke then accepted the Amendment on Sandlers' behalf. Sandlers ratified this acceptance by meeting with Heredias to discuss the alleged defects in the property. Further, Heredias note that Sandlers did not object to the Inspection Amendment until after the five-day period in which they had to submit a copy of the inspection report expired and after negotiations had broken down. Heredias argue that if Sandlers had objected when they met with Heredias, Heredias could have supplied them with the inspection report in time.

We agree with the trial court that there is, at the very least, a question of fact as to whether the Sandlers are estopped from asserting the Heredias' failure to submit a copy of the inspection report. "Estoppel may occur when one party's conduct leads another to believe that a right will not be enforced and thus causes the one misled to act to his detriment." *Hammes v. Frank* (1991), Ind.App., 579 N.E.2d 1348, 1358. The elements of estoppel are: 1) a representation or concealment of material facts; 2) such representation made with knowledge of the facts; 3) the party to whom it is made must be ignorant of the matter; 4) it must be made with the intent that the other party should act on it; and 5) the other party must be induced to act on the representation to his detriment. *Id.* Questions of material fact remain as to whether Sandlers themselves or their agent led Heredias to believe that the Inspection Amendment would satisfy the requirements of the Agreement.

We also note that even if the Sandlers are estopped from asserting that the Heredias did not comply with 16.01, several questions of fact remain. Heredias argue

that Sandlers were obligated under the Agreement to cure any defect. This is not what the contract provides. Rather, Sandlers were required to cure defects which would *reasonably interfere* with Heredias' enjoyment of the house. Heredias listed several defects, some of which Sandlers refused to cure. Which defects would have "reasonably interfered" with Heredias' enjoyment of the house is a question of fact. Further, the Sandlers were required to cure the defects to the "reasonable satisfaction" of the buyer. Sandlers did offer to replace the furnace, the exhaust fans, the smoke detectors and the garage walls. Whether Sandlers' offer was to the reasonable satisfaction of the Heredias is a question of fact. Finally, the record reveals a question of fact as to whether the lower level of the house was free from dampness.

The trial court's grant of Sandlers' motion to correct error is AFFIRMED.

SHARPNACK, C.J., and CONOVER, J., concur.