PSI ENERGY, INC., Appellant–
Defendant,

v.

AMAX COAL COMPANY, a Delaware
Corporation, and Amax Inc., a New
York Corporation, Appellees–Plaintiffs.

No. 30A05–9211–CV–420.

Court of Appeals of Indiana,
Fifth District.

Oct. 18, 1993.

Rehearing Denied Dec. 7, 1993.

Donald P. Bogard, J. William Dumond, PSI Energy, Inc., Plainfield, James L. Brand, Brand & Allen, Greenfield, Randall L. Sarosdy, Jonathan S. Spaeth, Akin, Gump, Hauer & Feld, L.L.P., Washington, DC, for appellant-defendant.

G. Daniel Kelley, Jr., Edward P. Steegmann, Ice Miller Donadio & Ryan, Indianapolis, for appellees-plaintiffs.

BARTEAU, Judge.

The primary issue presented is whether the trial court erred in granting Amax Coal Company's (AMAX) Application for Stay of Arbitration Proceedings and in denying PSI Energy, Inc.'s (PSI) Application for Order Compelling Arbitration. We conclude that the trial court erred in both respects and reverse accordingly.

### FACTS

PSI and AMAX entered into a "Coal Supply Agreement" (Agreement) in 1970. The Agreement provides that PSI will purchase coal from AMAX's Wabash Mine in Illinois for use in PSI's Gibson Generating Station in Indiana. By amendment, the Agreement runs until the year 2002.

Included in the Agreement is a section providing for relief from "gross inequities." PSI notified AMAX in July of 1990 that it was claiming a gross inequity—specifically that AMAX was receiving an excessive return on its investment. PSI also made other claims under the Agree-

ment. Negotiations ensued, but when they broke down, PSI filed for arbitration of all disputes, including its gross inequity claim. AMAX filed an Application for Stay of Arbitration in the Hancock Superior Court as to the gross inequity claim. The court granted the stay, holding that the gross inequity claim was not subject to arbitration. PSI appeals.

### STANDARD OF REVIEW

 The interpretation and construction of contract provisions is a function for the courts. On appeal, our standard of review is essentially the same as that employed by the trial court. *State Sec. Ins. Co. v. Ottinger* (1985), Ind.App., 487 N.E.2d 446.

### GROSS INEQUITY & ARBITRATION

 The trial court held that the "[f]ailure of the Parties to reach an Agreement that a Gross Inequity exists is not a dispute arbitrable pursuant to Section 28 of the Contract. Agreement as to the existence of a Gross Inequity by the Parties is a condition precedent to Gross Inequity Relief under Section 17(i) of the contract." R. 523–524. Section 17(i) provides:

*Gross Inequities.* The Parties hereto recognize that conditions or events beyond the control of either Party (including inflation or deflation of the economy or inefficient operation of the Mine) may result in a gross inequity to either Party. Whenever an agreement is reached between the Parties hereto that a gross inequity has occurred as the result of such conditions or events, the parties agree to renegotiate this Agreement in such a manner that such gross inequity is removed. Notwithstanding the foregoing provisions of this subsection (i), Seller shall not be permitted to claim gross inequity insofar as any such claim is based or related to costs associated with the construction or operation of the Capital Items excluded from the depreciation clause contained in Section 17(a)(xvi) hereof and any relief granted to Seller as a result of any other claim of gross inequity shall not include any relief with respect to such problems or costs.

PSI argues that the trial court read limitations and restrictions into Section 17(i) that do not exist and that in doing so the trial court violated a basic principle of contract interpretation that particular words and phrases cannot be read alone.

AMAX rebuts PSI's argument by claiming the issue of gross inequity relief is governed by the clear language of the Agreement. It argues that the language "[w]henever an agreement is reached between the Parties hereto that a gross inequity has occurred" means exactly what it says: that an agreement between the parties that a gross inequity has occurred is a precondition to gross inequity relief.

When the phrase "[w]henever an agreement is reached between the Parties hereto that a gross inequity has occurred" is isolated this way, AMAX's argument that an agreement is a precondition to gross inequity relief is persuasive. However, when the sentence is considered as a whole, and in relation to those sentences surrounding it, the meaning of the phrase takes on a different character. We recognize, at a minimum, two possible interpretations of the sentence. The first is the interpretation given it by AMAX that a precondition to gross inequity relief is an agreement between the parties that a gross inequity exists. Because of the construction of the sentence, i.e., the placement of the phrase "[w]henever an agreement is reached between the Parties" immediately preceding the phrase "that a gross inequity has occurred," it is quite plausible that the first phrase was meant to define the second.

The second possible interpretation is that the parties must agree that conditions or events outside the control of either party were the cause of a gross inequity. This interpretation is equally plausible because of the construction of the *paragraph*. The first sentence of Section 17(i) reads: "The Parties hereto recognize that conditions or events beyond the control of either party (including inflation or deflation of the economy or the inefficient operation of the Mine) may result in a gross inequity to either Party." Immediately following that sentence which emphasizes the occurrence

of conditions or events which could cause a gross inequity comes the disputed sentence: "Whenever an agreement is reached between the Parties hereto that a gross inequity has occurred as a result of such conditions or events, the parties agree to renegotiate this Agreement in such a manner that such gross inequity is removed." When read in context with the first sentence, this sentence could reasonably be interpreted to mean that the requisite agreement relates to whether or not the conditions caused the gross inequity, not the existence of the gross inequity. Further, the next and final sentence of the paragraph (which was added by amendment to the Agreement effective January 1, 1983) relates again to the *conditions* or *events causing* the gross inequity. These two equally plausible readings [1] of the sentence render it ambiguous because a contract is ambiguous when reasonable intelligent people could find its provisions susceptible of more than one interpretation. *Heredia v. Sandler* (1993), Ind.App., 605 N.E.2d 1212.

■ Generally, if the language used in a contract creates an ambiguity, the construction of that contract becomes a matter of law. *Quebe v. Davis* (1992), Ind.App., 586 N.E.2d 914. However, in this case, the Agreement contains an arbitration clause which provides in part:

> *Section 28. Arbitration.* Except as otherwise specifically provided for herein, any controversy, claim, counterclaim, defense, dispute, difference or misunderstanding arising out of or relating to this Agreement or breach thereof, shall be settled by arbitration....

Thus, if the arbitration clause covers Section 17(i), this court need only recognize the ambiguity in Section 17(i) and remand the case for submission to arbitration.

AMAX contends that the arbitration clause is quite narrow and does not apply to the gross inequities clause. Contrary to AMAX's contention, the phrase "arising

out of or relating to this Agreement" is the standard language recommended by the American Arbitration Association and has been interpreted as being extremely broad in scope. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.* (9th Cir.1983), 708 F.2d 1458, 1464; *Creson v. Quickprint of America, Inc.* (W.D.Mo.1983), 558 F.Supp. 984, 987. Because of the broad language of the provision, it would apply to all aspects of the agreement, unless "otherwise specifically provided for...."

Sections 18(a) and 19(b) of the Agreement contain exceptions to arbitration. While neither of them contain any language to the effect that the arbitration clause is inapplicable, each provides a course of action, other than arbitration, to be followed in the event of a dispute.

AMAX contends that Section 17(i), the gross inequities section, is also excluded from coverage by the arbitration clause. It compares the "[w]henever an agreement is reached between the Parties" language with the specific exceptions contained in Section 18 and 19. However, unlike Sections 18 and 19, which clearly provide for dispute resolution by means other than arbitration, Section 17(i) contains no such exception. As noted earlier, the meaning of "[w]henever an agreement is reached between the Parties" is far from clear and unambiguous. If the meaning of this phrase cannot even be readily ascertained, it certainly cannot be interpreted as specifically providing for exemption from the arbitration clause.

Questions are also raised concerning whether Indiana or Federal arbitration law applies. However, such concerns only arise when there is a question as to arbitrability because of a difference in outcome between State and Federal law. That situation is not present here and therefore the issue need not be addressed. We reverse with instructions to vacate the Stay of Ar-

---

1. This opinion should be in no way construed as holding that these two interpretations of Section 17(i) are the only possible interpretations. To the contrary, it is merely because these two interpretations were immediately recognizable, thus making the meaning ambiguous, that we need go no further in striving to interpret the contract. That is the job of the arbitrators.

bitration and grant PSI's Order Compelling Arbitration.

RUCKER and ROBERTSON, JJ., concur.